IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| CLIFFORD DEVINE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 118-195 |
| | * | |
| UNITED STATES, | * | |
| | * | |
| Defendant. | * | |

O R D E R

Before the Court is Defendant United States' ("Government") motion to dismiss. (Doc. 35.) For the following reasons, the motion is **GRANTED**.

I. BACKGROUND

Plaintiff Clifford Devine ("Plaintiff") worked as a contractor for an office machine repair company located outside of the Fort Gordon military base ("Fort Gordon"). (Amended Compl., Doc. 34, ¶ 8; see id. ¶¶ 5-6.) When an office within Fort Gordon needed a machine repaired, Plaintiff's employer would send an agent who would have to check in with the guards at the gate and, "with the approval and at the direction of the guards at the gate," proceed to the office in need of machine repair. (Id. ¶ 11.) On June 17, 2015, Plaintiff was sent to Fort Gordon to repair office machinery. (Id. ¶ 13; see id. ¶¶ 11, 14.) He "arrived at the gate, presented his paper[]work to a guard about going to a

building for a repair," then, with no warning, the gate guard "sent [Plaintiff] on into the base to do the computer repairs." (Id. ¶¶ 31, 32.)

At the time Plaintiff entered Fort Gordon, "the United States Army and/or Federal security police" were executing "a 'terrorist on base drill'" ("Drill"). (Id. ¶¶ 14, 31.) "The [D]rill was pre-planned." (Id. ¶ 17.) The rules were that "[o]ne or more agents of the [G]overnment would play the role of the [D]rill terrorists and would be outside of the locked down buildings"; "[o]ther agents of the [G]overnment would play the role [of] law enforcement officers roaming around the property of [Fort Gordon], outside of the buildings to catch the terrorist suspect"; and "Army, and other military and civilian personnel working inside buildings, would be told to stay locked indoors, and not allow others to enter." (Id. ¶ 16.) "Under the rules of the [D]rill[,] therefore[,] anyone who was outside and was not a law enforcement officer was . . . suspected of being one of the terrorists under the [D]rill." (Id. ¶ 22.)

According to Plaintiff, "[t]he agents of the United States planning the [D]rill[1] knew they had a duty to inform the public about the [D]rill and prevent a member of the public who is not part of the base from becoming an unwitting target of the [D]rill and subject to arrest or detention." (Id. ¶ 19.) Further, "the

---

[1] The Court refers to those who planned the drill as the "leadership planning the Drill."

2

guards running th[e] gates should have been made aware of the date and time of the [D]rill[] and been instructed to prevent any civilian from going to an appointment [during] the [D]rill so the civilian would not become an unwitting mistaken participant in the [D]rill." (Id. ¶ 21.)

Unbeknownst to Plaintiff, the Drill was underway when he entered Fort Gordon. (Id. ¶¶ 30-33.) Plaintiff arrived at the building needing machinery repair and a man came to the door. (Id. ¶ 41.) Attempting to gain entry, Plaintiff "showed him his paperwork and credentials" "but because of the [Drill], the man did not let [Plaintiff] enter." (Id. ¶ 42.) Plaintiff then approached an adjacent building and spoke to a man therein who told Plaintiff there was someone next door. (Id. ¶¶ 44, 48.)

"When [Plaintiff] was either leaving or attempting to enter a building, he was seen by one or more of the agents of the [G]overnment playing the role of officers as part of the [D]rill."[2] (Id. ¶ 49.) "By the rules of the [D]rill, because [Plaintiff] was outside, he was suspect and suspected of being the [D]rill terrorist." (Id. ¶ 50; see also id. ¶ 52.) Plaintiff tried to inform the agents of the reason for his visit "and to otherwise verify that he had authority to be there." (Id. ¶ 51.) Plaintiff "had nothing in his hands that could reasonably be interpreted to be a weapon." (Id. ¶ 56.) But Plaintiff "was treated as if the

---

[2] The Court refers to these agents as the "arresting personnel."

3

officers did not know how to handle this situation and thought he might be part of the [D]rill." (Id. ¶ 57.) The "[o]fficers cuffed [Plaintiff] and held him in cuffs for a period [of time]."[3] (Id. ¶ 59.) "After watching an officer make phone calls, a decision was made to take the cuffs off and have [Plaintiff] drive off the base." (Id. ¶ 60.) Plaintiff never fulfilled his contract. (Id. ¶ 62.)

On November 7, 2018, Plaintiff brought the present action. (See generally Compl., Doc. 1.) The Court allowed Plaintiff an opportunity to amend his complaint on January 7, 2020, and Plaintiff filed his Amended Complaint. (Order, Doc. 30; Amended Compl.) Thereafter, the Government filed the present motion to dismiss the Amended Complaint. (Gov't's Mot. to Dismiss, Doc. 35.) Plaintiff responded (Pl.'s Resp. Opp'n Mot. to Dismiss, Doc. 44), the Government replied (Gov't's Reply Supp. Mot. to Dismiss, Doc. 46), and Plaintiff sur-replied (Pl.'s Sur-Reply Opp'n Mot. to Dismiss, Doc. 47). The Government's motion is now ripe for consideration.

## II. LEGAL STANDARD

If the Government is entitled to sovereign immunity as to a claim, the Court lacks subject matter jurisdiction over that claim and dismissal is appropriate under Federal Rule of Civil Procedure

---

[3] Plaintiff provides that the period of time "will be shown by a video." (Amended Compl., ¶ 59.)

12(b)(1). See Bennett v. United States, 102 F.3d 486, 488 n.1 (1996). A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be either a "facial" or "factual" attack. Morrison v. Amway Corp., 323 F.3d 920, 924-25, 924 n.5 (11th Cir. 2003). The Government's motion, as related to immunity, is a facial attack on the Amended Complaint because the Court's resolution of the immunity question does not depend on adjudicating the merits of the case. See Douglas v. United States, 814 F.3d 1268, 1275 (11th Cir. 2016). In a facial attack on subject matter jurisdiction, the complaint's allegations are deemed presumptively truthful, and "[t]he court is required 'merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction.'" Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1233 (11th Cir. 2008) (quoting Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)).[4]

### III. DISCUSSION

Plaintiff brings this suit under the Federal Tort Claims Act ("FTCA") alleging three counts against the Government: (1) False imprisonment under O.C.G.A. § 51-7-20; (2) Breach of landowner's duty to warn of dangerous conditions; and (3) Battery.[5] (Amended

---

[4] Because the Court finds it lacks subject matter jurisdiction over this action, it declines to analyze the Government's motion to dismiss pursuant to Rule 12(b)(6).

[5] To the extent Plaintiff mentions his Fourth Amendment rights, he does so only as a challenge to the Government's assertion that its conduct was discretionary and, thus, immune under the FTCA's discretionary duty exception to waiver at 28 U.S.C. § 2680(a). (Pl.'s Resp. Opp'n Mot. to Dismiss, at 6-7); see Rosas v. Brock, 826 F.2d 1004, 1008 (11th Cir. 1987); Mancha v. Immigr. & Customs Enf't, No. 1:06-CV-2650-TWT, 2009 WL 900800, at *4 (N.D. Ga. Mar. 31, 2009) (When "the

Compl., ¶¶ 1, 64-81.) The Government argues the Court lacks subject matter jurisdiction over all Counts. (Gov't's Mot. to Dismiss, at 8-13, 14-15.) For the following reasons, the Court agrees.

**A. Sovereign Immunity and the FTCA**

The United States maintains sovereign immunity against suits unless it has "unequivocally expressed" its intent to waive immunity. United States v. Nordic Vill., Inc., 503 U.S. 30, 33 (1992) (citation omitted). "The FTCA operates as a limited waiver of the United States' sovereign immunity." Bennett, 102 F.3d at 488 n.1 (11th Cir. 1996). Thus, when a tort claim is brought against the United States, the court evaluates whether "the United States may be held liable pursuant to the terms of the statute." Id. If the court is unable to find a waiver, the court lacks subject matter jurisdiction to maintain the suit. Id.

Starting with the text of the FTCA, it provides district courts with:

> [E]xclusive jurisdiction of civil actions on claims against the United States, for money damages . . . , for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

---

[G]overnment's conduct allegedly violate[s] [a] [p]laintiff's constitutional rights[, that] means that the conduct was not discretionary."). Plaintiff does not bring a Fourth Amendment claim.

6

28 U.S.C. § 1346(b)(1). The FTCA includes exceptions to the waiver. See generally 28 U.S.C. § 2680. Acknowledging that the FTCA's waiver language is "sweeping," the Supreme Court has "narrowly construed exceptions to [the] waiver[]." Nordic Vill., 503 U.S. at 34 (collecting cases). Nevertheless, the United States' consent to be sued in the first place "must be construed strictly in favor of the sovereign." Id. (citations and internal quotation marks omitted).

The Government does not dispute that the FTCA's general waiver of immunity language applies. (See Gov't's Mot. to Dismiss, at 4-5, 8-13, 14-15.) Instead, the Government believes two exceptions apply thereby reestablishing its sovereign immunity protection: (1) 28 U.S.C. § 2680(a), the "discretionary duty exception"; and (2) 28 U.S.C. § 2680(h), which protects the Government from claims arising out of, among others, battery and false imprisonment against non-investigative or law enforcement officers. (Id. at 5, 8-13, 14-15.) For the following reasons, Section 2680(h) shields the Government from Plaintiff's claims; thus, the Court declines to decide the applicability of the discretionary duty exception.

## B. Section 2680(h)

28 U.S.C. § 2680(h) provides a waiver exception for "[a]ny claim arising out of . . . battery . . . [or] false imprisonment" unless the claim is against an "investigative or law enforcement officer of the United States Government." In determining whether

7

this exception protects the Government, the Court breaks down Plaintiff's claims into, first, the two enumerated torts: battery and false imprisonment, and, second, the failure to warn claim potentially "arising out of" the enumerated torts.

1. Enumerated Torts

The only group of actors that could potentially be considered comprised of investigative or law enforcement officers is the arresting personnel; therefore, the Court lacks jurisdiction over claims that the gate guards or leadership planning the Drill are liable for false imprisonment or battery. Consequently, if the arresting personnel are not investigative or law enforcement officers under the exception, the Court lacks jurisdiction over Plaintiff's false imprisonment and battery claims in their entirety.

"'[I]nvestigative or law enforcement officer' means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h) (internal quotation marks omitted). Plaintiff alleges the arresting personnel were "play[ing] the role [of] law enforcement officers." (Amended Compl., ¶ 16; see also id. ¶¶ 23, 25, 26, 49.) The question, then, is whether those individuals allegedly playing the role of law enforcement officers takes them to the level of a law enforcement officer within the meaning of Section 2680(h).

The Fifth Circuit case, Cross v. United States, seems to address this question head on. 159 F. App'x 572 (5th Cir. 2005). In Cross, military police were "involved in a training exercise in which they were securing the [base] from notional terrorists." Id. at 576. During the training, they stopped the plaintiff "mistakenly th[inking] that she was a participant in [the] military training exercise" and ordered the plaintiff out of the car, which she refused to do. Id. at 573-74. "After a short period of questioning, the soldiers determined [the plaintiff] was not part of the training exercise and released her." Id. at 574. The district court held that "it had no jurisdiction over the false imprisonment or assault claims," id.; the Fifth Circuit affirmed because when the individuals stopped the plaintiff, "they were acting in a security capacity," and "security is a combat and not investigative function," id. at 576.

Here, the Amended Complaint provides that "[b]y the rules of the [D]rill" Plaintiff "was suspect and suspected of being the [D]rill terrorist" "because [he] was outside." Plaintiff is clear in his allegations that he "was stopped because of the [D]rill" and "treated as if the officers did not know how to handle this situation and thought he might be part of the [D]rill."[6] (Amended

---

[6] Although Plaintiff points to the Government's briefed arguments attempting to show the arresting personnel believed he was committing a crime, Plaintiff — having already been afforded an opportunity to amend his complaint — makes no such allegation. (Pl.'s Resp. Opp'n Mot. to Dismiss, at 3-4, 11; see also Gov't's Reply Supp. Mot. to Dismiss, at 11.) In fact, Plaintiff alleges, "[t]here [was] no evidence known to the officers before the stop or that was provided to the officers by others before the stop that

9

Compl., ¶ 53.) After realizing Plaintiff was not part of the Drill, they decided to release Plaintiff and have him drive off the base; at that point, "[o]ne of the officers told him he had been involve[ed] in a training 'exercise.'" (Id. ¶ 61.)

Plaintiff attempts to distinguish Cross because the arresting personnel here "investigated" whether Plaintiff was part of the Drill. (Pl.'s Resp. Opp'n Mot. to Dismiss, at 3-4.) In Cross, however, the officers detained Plaintiff while they determined whether she was part of the training exercise. And, as Plaintiff quotes, "'investigate' must be given its normal meaning (akin to that when it is employed in such terms as 'private investigator'), not just the generic sense that [the plaintiff] suggests — that of simply looking into and thinking about something in the process of reaching a decision." (Id. at 5 (quoting Emps. Ins. of Wausau v. United States, 815 F. Supp. 255, 259 (N.D. Ill. 1993)).) Further, Plaintiff contrasts Cross because the plaintiff there was stopped at the border of the training zone apparently to claim that any security or "military function ended at the border of the Fort and gate when [Plaintiff] was given permission to enter." (Id. at 3.) But the Court sees no reason why area security can only occur at

---

[Plaintiff] had committed or was committing a crime, nor was their articulable suspicion that [Plaintiff] had or was in the process of committing a crime." (Amended Compl., ¶ 54.) In its sur-reply, Plaintiff continues, "Inferring and implying [Plaintiff] violated the law runs contrary to the undisputed fact they let him go after they re[alized] a mistake had been made in the operation of the [D]rill." (Pl.'s Sur-Reply Opp'n Mot. to Dismiss, at 2.) Further, Plaintiff provides, "By the facts affirmatively pleaded, . . . the cause of the stop, arrest[,] and investigation was the [D]rill." (Id. at 4.)

a training site's border. Thus, the Court finds no claim that takes the arresting personnel's actions from security during a training exercise to an investigation by law enforcement. The Government has not waived its sovereign immunity as to Plaintiff's false imprisonment and battery claims, and the Court lacks jurisdiction thereover.

### 2. Claim Arising out of Enumerated Torts

Having found Section 2680(h) prevents Plaintiff's false imprisonment and battery claims against the Government, the Court now determines whether the Government is immune from Plaintiff's failure to warn claim.[7] A claim may fall within the purview of Section 2680(h) even when it is not among the enumerated claims. Metz v. United States, 788 F.2d 1528, 1532-34 (11th Cir. 1986); see also Burns v. United States, 809 F. App'x 696, 701 (11th Cir. 2020). This is so "because [Section] 2680(h) bars any claim 'arising out of' [the enumerated torts]." Reed v. U.S. Postal Serv., 288 F. App'x 638, 639-40 (11th Cir. 2008) (citing Metz, 788 F.2d at 1533). Thus, Section 2680(h) "encompass[es] situations where 'the underlying governmental conduct which constitutes an excepted cause of action is "essential" to [the] plaintiff's claim,'" Cadman v. United States, 541 F. App'x 911, 913 (11th Cir. 2013) (quoting Metz, 788 F.2d at 1534 (quoting Block v. Neal, 460

---

[7] Although not argued by either party, because this is a matter of the Court's jurisdiction, the Court undertakes an analysis of whether Plaintiff's failure to warn claim triggers Section 2680(h)'s exception.

11

U.S. 289, 297 (1983))), such as when a claim in "negligence underlies the [enumerated intentional tort]," United States v. Shearer, 473 U.S. 52, 56 (1985). For example, in Metz, because the plaintiff's only injury was false arrest and false arrest is barred under Section 2680(h), his intentional infliction of emotional distress and intrusion upon seclusion claims were likewise barred. 788 F.2d at 1534-35. "It is the substance of the claim and not the language used in stating it which controls." Reed, 288 F. App'x at 640 (quoting JBP Acquisitions, LP v. United States ex rel. Fed. Deposit Ins. Corp., 224 F.3d 1260, 1264 (11th Cir. 2000)).

Providing further examples, courts have found that the following non-enumerated causes of action arose out of the excepted torts: (1) "[N]egligent hiring, retention, and supervision claims [that] ar[ose] out of [the plaintiff]'s alleged sexual abuse," Lindsey v. Jackson, No. 1:14-CV-789-ODE-LTW, 2014 WL 12743785, at *4 (N.D. Ga. Dec. 22, 2014); (2) Claims for negligent supervision and failure to warn based on a battery committed by a Government employee, Shearer, 473 U.S. at 54-55, 56-57; (3) A negligent hiring claim based on an assault and a battery, Reed, 288 F. App'x at 640; and (4) False light and invasion of privacy claims based on defamatory statements,[8] O'Ferrell v. United States, 253 F.3d 1257, 1265-66 (11th Cir. 2001).

---

[8] Libel and slander are enumerated in Section 2680(h). 28 U.S.C. § 2680(h).

Here, Plaintiff claims that because the Government failed to warn him of the Drill dangers, which were "that he might be arrested pursuant to the rules of the [D]rill" (Amended Compl., ¶ 72), he was subject to false imprisonment and battery. Plaintiff's failure to warn claim plausibly alleges improper planning and communication actions apart from the allegations supporting his false imprisonment and battery claims. (Id. ¶¶ 71-73.) The injuries Plaintiff alleges, however, were the offensive handcuffing and wrongful detention. (Id. ¶¶ 74-76.) As such, any injury Plaintiff suffered as a result of the Government's failure to warn stems from the alleged false imprisonment and battery. Plaintiff's failure to warn claim arises out of his false imprisonment and battery claims. Because the Court previously found Plaintiff does not accuse any investigative or law enforcement officer, Section 2680(h) returns the Government's immunity.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Government's motion to dismiss. (Doc. 35.) **IT IS HEREBY ORDERED** that Plaintiff's case is **DISMISSED**. The Clerk is **DIRECTED** to terminate all pending motions and deadlines, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 10th day of September, 2020.

*[signature]*
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA